# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Lori Anne Smith, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 9:16-2761-RMG |
| vs. ) | |
| ) | |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on July 31, 2017, recommending that the Commissioner's decision be affirmed. (Dkt. No. 18). Plaintiff timely filed objections to the R & R, and the Commissioner filed a response. (Dkt. No. 22, 23). For reasons set forth below, the Court reverses the decision of the Commissioner and awards benefits to the claimant.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources. 20 C.F.R. § 404.1527(b). The regulation, popularly known as the "Treating Physician Rule," requires the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner pledges to give special consideration to the opinions of treating and examining

physicians, noting explicitly that "we will give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you." *Id.* 404.1527(c)(1)(2).

The Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). Further, since the Commissioner recognizes that the non-examining expert has "no treating or examining relationship" with the claimant, she pledges to weigh the opinions of non-examining physicians under the same standards as any other medical opinion and to consider the supporting explanations for their opinions and "the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources." *Id.* §§ 404.1527(c)(3), (e)(2)(ii). The Commissioner is also prohibited from "playing doctor," by substituting the medical opinions of the Commissioner or the Administrative Law Judge (ALJ) for those of physicians. *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017).

The Commissioner is also obligated to weigh and consider a claimant's subjective complaints of pain beyond consideration of objective medical evidence. Under the agency's regulatory scheme, the ALJ must first determine if there is objective medical evidence showing a condition that reasonably could produce the claimant's symptoms. If such objective medical evidence is present, the ALJ must then evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's activities. 20 C.F.R. § 404.1529. In making this determination at the second stage of the pain assessment process, the ALJ may not require objective medical evidence to document the intensity of the claimant's pain

since this would improperly increase his burden under the regulatory scheme. *Lewis*, 858 F.3d at 866.[1]

## Factual Background

This application for disability benefits has a protracted administrative and appellate history, dating back over eight years. The relevant time period for this disability claim is from October 6, 2004 until the date of last insured of March 31, 2008. This Court has twice reversed the decision of the Commissioner denying benefits for Plaintiff, both times finding that the ALJ had failed to consider all of the medical evidence in the record and to properly apply the provisions of the Treating Physician Rule. In the Court's first decision in this matter, the decision was reversed because the ALJ did not evaluate the opinions of Dr. Nancy Lembo, the claimant's treating pain specialist. *Lori Anne Smith v. Michael J. Astrue*, C.A. No. 9:11-376-RMG, 2012 WL 2376898 (2012). Two years later, the Court again reversed the decision of the Commissioner because the ALJ found there was no objective evidence to support the claimant's persistent complaints of severe pain when the record contained multiple radiographic studies demonstrating significant spinal abnormalities. The Court further found reversible error in the ALJ's failure to address the ongoing treatment afforded by the claimant's family physician, Dr. Patricia Campbell, who managed the Plaintiff's pain therapy when she was no longer able to afford the specialist pain management services of Dr. Lembo. *Lori Ann Smith v. Carolyn W.*

---

[1] In the course of this disability application, the Social Security Administration issued a new Social Security Rule (SSR) on the evaluation of pain, superseding the prior SSR. *See* SSR 16-3P, 2016 WL 119029 (March 16, 2016) and SSR 96-7P, 1996 WL 374186 (July 2, 1996). There has been much debate concerning whether the earlier or later SSR on pain should be applied, but the Court need not address this issue since the application of either SSR would not materially change the analysis or outcome here. *See Mendenhall v. Colvin*, 2016 WL 4250214 (C.D. Ill. 2016).

*Colvin*, C.A. No. 9:13-1993 (2014). The Court observed that it was "mystifying . . . why the treatment provided by the Plaintiff's treating family physician, Dr. Campbell, which involved frequent pain assessments and prescriptions for pain medications, went unmentioned." *Id.* at 8-9.

This latest order, which the Court now reviews here, acknowledged that the claimant did have abnormal radiographic findings in her cervical spine and reduced claimant's residual functional capacity level from the light work level found in the earlier administrative decisions to less than the full scope of sedentary work.[2] Tr. 626-28. Rather than assessing the claimant's subjective complaints of pain in accord with the standards set forth in 20 C.F.R. § 404.1529, the ALJ evaluated the record evidence to determine whether the claimant had an objective basis for a second orthopaedic surgery of her cervical spine during the relevant time period ending on March 31, 2008. The ALJ pointed to objective evidence of progressively worsening MRI findings after the date last insured to support his conclusion that the claimant was not disabled during the relevant time period. As the Court will address more fully later in this order, it is clear legal error to determine the validity of a claimant's subjective complaints of pain on the basis of whether there was objective evidence of a need for further surgery during the insured period.

By way of background, Plaintiff was involved in a motor vehicle accident on October 6, 2004, in which her neck was flexed both forward and backward. Tr. 286. Plaintiff initially was treated non-surgically by her orthopaedic surgeon, Dr. Stephen Rawe, for her complaints of persistent neck pain and radiating left arm pain. When her condition did not improve, she underwent a major orthopaedic surgery in May 2005, which involved an anterior cervical

---

[2] A claimant able to perform only a reduced scope of sedentary work has the lowest level of functional capacity recognized under the Social Security Act that would not require a finding of disability.

diskectomy and an anterior interbody fusion. Tr. 298-300. Plaintiff experienced some initial improvement following her surgery but her neck pain soon worsened. Tr. 290, 291, 292, 293. A repeat MRI performed in February 2006 showed flattening of the anterior cord at C/4- C7, but Dr. Rawe concluded that Plaintiff's condition did not indicate a need for a second surgery. Tr. 293, 305-06.

With no surgical option then available, Plaintiff's medical care, including her complaints of severe neck pain, was managed by her family physician, Dr. Campbell. Plaintiff was treated by Dr. Campbell with powerful narcotic pain medications, including Oxycontin and Percocet, to assist Plaintiff in tolerating her severe neck pain. Tr. 294. Thereafter, Dr. Campbell referred Plaintiff to a pain medicine specialist, Dr. Lembo, to assist in the medical management of Plaintiff's severe neck pain. In a March 2007 note, Dr. Lembo documented Plaintiff's frustration with her chronic pain, which involved the neck with radiating pain down the shoulders. Efforts were being made to move Plaintiff from Oxycontin to Percocet and Mepergan, all narcotic medications appropriate for the management of severe pain. Tr. 263. Plaintiff had no medical insurance at this time and soon went back to her primary treating physician, Dr. Campbell, for her pain management. Tr. 262.

During the period from June 2007 until Plaintiff's date last insured, March 31, 2008, Dr. Campbell was principally managing the claimant's medical care, including her pain management. Dr. Campbell restarted Plaintiff's Oxycontin in June 2007 when her severe pain was causing her to consider suicide. Tr. 277. In July 2007, Dr. Campbell added Opana ER to Plaintiff's medicine regime, which is a narcotic medication twice as powerful as Oxycontin. Tr. 275. Over the ensuing months, Dr. Campbell switched Plaintiff on and off a variety of powerful narcotic

medications in an effort to avoid dependence on any particular drug. Tr. 268, 269, 272, 273, 274, 276, 396, 397. In one note in late 2007, Dr. Campbell documented Plaintiff's "complicated regimen" of a dose of Opama ER around 2:00 p.m., a 40 mlg. dose of Oxycontin at 7:00-8:00 p.m. and an occasional dose of Percocet an hour later. Tr. 271. Dr. Campbell also documented that Plaintiff's condition worsened whenever she engaged in any physical activity. Tr. 274, 275, 388. Dr. Campbell also documented symptoms of anxiety and depression associated with Plaintiff's chronic and severe pain. Tr. 269, 273, 274.

In February 2008, Plaintiff returned to Dr. Lembo, the pain specialist, in the hope of getting some better pain relief. Dr. Lembo documented that Plaintiff's pain was increasing and she had limited range of motion in her cervical spine. She recommended that Plaintiff continue the medical treatment that was being provided by Dr. Campbell, which was primarily a medical regimen of powerful narcotic pain medications. Tr. 261-62.

Plaintiff returned to Dr. Rawe in March 2009, who repeated an MRI of the cervical spine. He still was of the opinion that the findings on the MRI did not provide a basis for further surgery. Dr. Campbell continued to manage this unsatisfactory situation and requested again that Dr. Lembo assist. Tr. 392-93. Dr. Lembo evaluated Plaintiff on June 10, 2009 and recommended a surgical option be reconsidered. Tr. 340. Dr. Lembo documented that Plaintiff's chronic pain condition had persisted since her 2005 surgery. Tr. 340. Dr. Rawe evaluated Plaintiff once again on October 20, 2009 and a repeat MRI demonstrated changes indicating that a surgical option was then feasible. Tr. 357, 360, 370. A repeat surgery was performed by Dr. Rawe in November 2009, and shortly thereafter Plaintiff's symptoms of severe

and persistent neck pain returned. Tr. 375, 407-08, 416, 417-18, 428-29, 438.³

## Discussion

### A. The ALJ failed to evaluate Plaintiff's subjective complaints of pain in accordance with the standards set forth in 20 C.F. R. § 404.1529.

The Commissioner has struggled for years defending decisions in which administrative law judges have failed to properly evaluate a claimant's subjective complaints of pain in accord with the agency's own regulatory standards. Earlier this year, the Fourth Circuit observed that disputes with the Commissioner over the proper evaluation of pain was "nothing new" and reflected a failure by the Commissioner to provide appropriate consideration to a claimant's subjective statements and the findings of treating physicians rather than require objective evidence to prove the presence of pain. *Lewis*, 858 F.3d at 865-68.

As the Fourth Circuit correctly noted in *Lewis*, the evaluation of pain must be conducted in two stages. First, the Commissioner must determine if there is objective evidence to show a condition that could reasonably produce the symptoms of pain complained of by the claimant. If such a condition is present, the Commissioner must then evaluate the intensity, persistence, and limiting effects of the pain symptoms to determine the extent to which they limit the claimant's work activities. *Id.* at 866; § 404.1529. The Commissioner pledges to consider all of the available evidence, including information the claimant provided and her treating sources, since

---

³ The ALJ found that the evidence related to Plaintiff's medical condition after the date last insured of March 31, 2008 was "only marginally relevant to the instant decision." Tr. 629. However, it is well settled that evidence of a claimant's medical condition post the last date insured may be relevant if it relates back to the insured people. *Bird v. Commissioner of Social Security*, 699 F.3d 377, 340-41 (4th Cir. 2012). Here the post-insured period records consistently document that Plaintiff's chronic back impairments and severe pain dated from the 2005 accident and corroborated findings during the insured period about the nature and severity of Plaintiff's chronic pain.

symptoms of pain "are subjective and difficult to quantify" and may produce "a greater severity of impairment than can be shown by objective medical evidence alone." § 404.1529(c)(3). The regulations require, in assessing a claimant's pain complaints, to consider such factors as the claimant's daily activities, the location, duration, frequency and intensity of the pain, precipitating and aggravating factors, and the type and dose of medications required to alleviate the pain. § 404.1529(c)(3)(i)-(iv). Where the Commissioner required the presence of objective medical evidence to prove the second stage of the pain evaluation, the Fourth Circuit found in *Lewis* that this "improperly increased her burden of proof" and was reversible error. 858 F.3d at 866.

There is no question that the record demonstrates that objective medical evidence in the record demonstrates that Plaintiff had spinal cord abnormalities that could produce the type of pain complained of by Plaintiff, thus satisfying the requirements of stage one of the pain evaluation process. As the Court noted in its 2014 order, radiographic studies demonstrated the presence of such cervical spine abnormalities as degenerative disk disease, central disk protrusion, bony contact with the spinal cord, disk osteophyte complex, moderate central canal stenosis, and facet hypertrophy. Tr. 198, 305-06, 337.

With the presence of objective evidence that could produce Plaintiff's complaints of pain, the ALJ was then required to assess all evidence in the record to evaluate the intensity, persistence and limiting effects of Plaintiff's pain symptoms. Rather than follow these well established and mandatory standards for evaluating a claimant's complaints of pain, the ALJ focused in his decision on whether there was sufficient medical evidence in the record prior to the expiration of the insured period to demonstrate that a second cervical spine surgery was

necessary. Since such objective medical evidence was not present until after the end of the insured period, the ALJ concluded that Plaintiff had failed to establish her claim of disability. Tr. 629-30. This analysis, however, is fundamentally flawed because the fact that the conditions necessary for a second cervical spine surgery might not be present at a particular time does not equate to the absence of a claimant's severe pain. Requiring the Plaintiff to prove that she required a second surgery before the expiration of her insured period to prove the legitimacy of her complaints of pain is wholly inconsistent with the regulatory standards.

Plaintiff was under the care of three treating physicians during the relevant time period at issue here. None of these providers expressed the slightest doubt that Plaintiff was experiencing severe chronic pain in her neck with symptoms of pain radiating down to her shoulders and arms. Each treater prescribed or approved of the prescribing of high levels of powerful narcotic pain medications, treatment appropriate only in the face of severe pain. The treating physicians documented with remarkable consistency the location and severity of the Plaintiff's pain symptoms and confirmed the pain symptoms were aggravated by any type of substantial physical activity. Tr. 262, 263, 271, 274, 277, 294. A fair review of the numerous office notes of the treating doctors leaves no doubt that Plaintiff's capacity to sustain any physical activity was profoundly limited and she was able to tolerate her condition only with the provision of powerful narcotic pain medications. Had the ALJ evaluated the records of Plaintiff's treating physicians in accord with the Treating Physician Rule and the pain regulations, there is no doubt that Plaintiff could not sustain regular physical activity for even sedentary employment and any finding to the contrary would not be supported by substantial evidence. The Commissioner's failure to evaluate Plaintiff's complaints of severe pain in accordance with the standards set forth in §

404.1529 constitutes reversible error.

### B. The ALJ failed to evaluate the medical records of Plaintiff's primary physician, Dr. Campbell, in accord with the Treating Physician Rule and the August 2014 order of this Court.

This Court reversed the earlier decision of the Commissioner due to multiple legal errors, including the failure to "consider Plaintiff's ongoing treatment by her family physician, Dr. Campbell . . . ." *Lori Anne Smith v. Carolyn W. Colvin*, slip op. at 7. The Court's order specifically referenced Dr. Campbell's frequent assessments of Plaintiff and her prescribing of pain medications. *Id.* at 8-9. Rather than analyze Dr. Campbell's records, the ALJ dismissed the numerous office notes because Dr. Campbell "did not document any physical examination findings at that time." Tr. 629. Dr. Campbell's office notes, however, document her persistent efforts to manage Plaintiff's severe pain with ever changing combinations of narcotic pain medications, which clearly demonstrate the severity and chronic nature of Plaintiff's pain symptoms. The office notes paint a clear picture of an increasing desperate claimant suffering from severe pain and a conscientious physician attempting to find some combination of medications to provide her patient relief. Tr. 271, 272, 273, 274, 275, 276, 277. The fact that Dr. Campbell did not document physical examinations during her numerous office visits with Plaintiff is not be a basis to ignore highly relevant and probative evidence contained in those records. Is it remotely likely that Dr. Campbell would be prescribing a regimen of powerful narcotic medications and seeking the assistance of specialist physicians when Plaintiff's pain persisted if she had not reached the professional opinion that Plaintiff's persistent complaints of pain were genuine and severe? To ignore the numerous office visits of Plaintiff with her primary treating physician over the critical time period simply because the records did not contain

information the ALJ thought should be there is clearly violative of the Commissioner's pledge to consider all of the evidence available to evaluate a claimant's complaints of pain.[4] The ALJ's failure to evaluate and weigh the evidence in Dr. Campbell's office records violates the Treating Physician Rule and the prior order of this Court, and require reversal of the ALJ decision.

## The Remedy

This Court's general practice is to remand decisions to the Commissioner for further administrative action, but it is well settled that the District Court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by the District Court is appropriate where the record is fully developed and it is clear the Commissioner would be required to award benefits on remand. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Williams v. Comm'r of Soc. Sec.*, 104 F. Supp. 2d 719, 721 (E.D. Mich. 2000). This is particularly true where there has been a significant lapse of time in the administrative processing of the claim. *Holohan*, 246 F.3d at 1210; *Podedworny v. Harris*, 745 F.2d 210, 223 (3rd Cir. 1984).

The differences between the parties regarding Plaintiff's residual functional capacity is quite narrow. The Commissioner concluded that the Plaintiff retained the residual functional for less than the full scope of sedentary work and Plaintiff asserts that she is not able to perform sedentary work. The Commissioner's conclusion was reached without weighing the evidence from Plaintiff's primary treating physician, Dr. Campbell, which documents Plaintiff's ongoing

---

[4] The ALJ's determination that Dr. Campbell's office records were defective and thus unworthy of his consideration because she had not documented physical examination findings in her office notes appears to establish from some unknown source the minimal requirements of a proper physician's office note. This is the very type of an ALJ "playing doctor" that the Fourth Circuit recently admonished in *Lewis*. 858 F.3d at 869.

struggle with chronic and severe pain and the aggravation of her already severe symptoms with even minimal activity. Tr. 275, 340, 388. Dr. Campbell's records also document the prescribing to Plaintiff of some of the most powerful narcotic pain medications on the market. The records of Plaintiff's treating physicians document a persistent pattern of severe pain and the administration of narcotic medications that are obviously incompatible with any type of sustained employment. Indeed, a finding to the contrary would not be supported by substantial evidence.

The Court also notes that this is the third occasion that it has reversed the Commissioner in this case for failing to consider the entire record and to weigh that evidence in light of controlling legal standards. A third remand would unnecessarily delay the inevitable and would be manifestly unjust after over eight years of litigating this claim. An award of benefits to Plaintiff is the legally proper decision.

## Conclusion

Based on the foregoing, the Court **REVERSES** the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and **REMANDS** the matter to the Commissioner for an award of benefits for the period October 6, 2004 through March 31, 2008.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
September 7, 2017